Good morning, may it please the court, my name is Elizabeth Hertz and I am appearing on behalf of the defendant appellant, Kevin Lamm. Under Rule 901, the proponent of evidence must have a rational basis to show that the In this case, what the prosecution had to establish was that the Facebook evidence was authored by the defendant. In other words, that the Mike Malone and Kevin Lamm Facebook accounts were the defendant's accounts. Authenticity may not be a high bar, but it's still a bar. And because social media evidence is so easy to falsify, it is not enough for the government to show that the records come from Facebook. There has to be more, something personal that links the defendant to the account and proves that it is, in fact, the defendant using it. The case law from both this and other circuits makes this clear. As the Second Circuit held in Vayner, the use of a photograph or a name isn't enough to provide a rational basis for authenticity. There has to be corroborating evidence, an admission of ownership, knowledge of a password, unique style of communicating, meetings arranged with the defendant through the messages. If the prosecution here had relied on the metadata to show that the accounts had been accessed from a particular device or IP address, that would have been a direct personal link showing use by the defendant. Counsel, isn't there enough here, though? I mean, some of the images, as I understand the record, were found on SD cards inside your client's apartment. And there were, I think also, my notes indicate, screenshots of conversations were found inside his apartment. Isn't that enough to link it to him personally? Not maybe an admission, but certainly enough to authenticate the evidence. Your Honor, I will go through each of those categories individually. In the case of the photographs of the victim that were found on the memory card in the Yes, end of story. But count two is for production. The solicitation of those images from the victim. And that means making a reasonable showing that the Mike Malone account was the defendant's account. These images weren't saved to the memory card until three weeks after the Facebook messenger conversation. Therefore, there remains the distinct possibility that was never disproved that Jorgensen, the other defendant who was picked up during the same sting operation, was responsible for having these images created. In the case of the photographs on the memory card that matched those, these are not the photographs of the victim, but the photographs on the memory card that appeared on the Facebook accounts. Several of these were stock photos, which you could find anywhere online. And again, photographs aren't enough. The case law makes that fairly clear because anybody who has a social media page of their own and anybody in the world can go out there, download those photographs from the social media page and upload them to a new page. And in addition, if you are if you know somebody personally, as the defendant and Mr. Jorgensen did, it's it's not beyond the pale that you might have photographs of that person. What about the what about the email address associated with both accounts, which was the same, as I understand it, the same email address he used to register as a sex offender. And then you also have a phone number. His phone number, his cell phone number was associated with the accounts as well. Well, Judge, first of all, the email address, again, that's both the email address and the phone number are things that anybody who knew the defendant could figure out. And I believe in the case of the email address that was not associated with the Mike Malone account. The phone number was, but the email was not. Finally, when it comes to the screenshots of conversations that were found on the phone seized in the defendant's apartment, the investigating agent conceded at trial that she didn't know if those screenshots were taken on the phone or not. So, again, that's another piece of evidence where the possibility remains that a third of those Facebook messages and then sent them on. Again, we're talking about production and production is the key here when it comes to the Malone account. You don't think, though, that somebody looking at this as a whole. Now, I think we have to look at all these things as a whole. The photos, the email address, the phone number would say, gosh, you know, yes, there's a possibility you identify. There's a possibility that somebody hijacked his information, put it up there. But a rational person might also say, you know, well, that's probably enough. I mean, that constellation of factors unique to him is probably enough to make it rational to think that that's his account. I mean, is that is that fair or not? It's true, Your Honor, that in making the assessment on authenticity, the the the key is to look to all of the circumstances, as you said. However, again, when you look at the case law, both in this circuit and others, there is it does require more than linking of photographs and linking of publicly available personal information. Again, it has to be something more personal than simply I found these photos at point A, I found these photos at point B. Once again, there are many areas where where really we could have seen more and we didn't. Again, the lack of any IP evidence is is is something that would have if that had been there, it would have filled the gap. But merely relying on the existence of the photographs on the Facebook page and on the on the SD cards, I do not believe is enough. Let me ask you this. So Judge Krause and I think both parties cited in the Third Circuit wrote what I think is a very helpful opinion in the United States versus Brown. It does a good job of analyzing this issue. What is there that is missing here? Well, in the Brown case, if if I'm this is in the Brown case, I believe the defendant there had actually admitted to owning the Facebook account, provided the password to  The only thing that's missing here, and this is one of the factors in Brown that doesn't exist here, is that you had multiple witnesses who had interacted with this Facebook account. And I believe several who had also interacted in person with the defendant after these discussions on Facebook. So once again, the volume of corroborating evidence, the volume of personal links between the defendant and the account was the balance was was tipped far more heavily than it was here. So the idea here that with this argument is circumstantial evidence is fine. You would agree with that. I think that's what Judge Krause explicitly said in that case. But here there just wasn't enough circumstantial evidence. Yes, Your Honor. Authentic authentication is an automatic. And in the case of social media evidence where it's so easy to create a fake profile, courts must take care to ensure that it stays as a matter that is not automatic. Moving on to the hearsay arguments. What's important here is what this evidence was offered to prove. The heart of the evidence in the three categories that that have been identified in the brief was not the statements allegedly made by the defendant, but the truth of the statements offered by the other declarants. The first category is the messages from Jorgensen to the Lam account. And looking at these, it's important to know what are these exhibits being offered to prove. It's not to provide context for statements made by Lam, but to show that Jorgensen was using a fake account and that Jorgensen was communicating with the Mike Malone account and linking it to Lam. That was the truth of Jorgensen's statements and Jorgensen was not there to verify. As for the statements from the victim, the biggest problem is that this is an interaction between a non-testifying witness and a Facebook account that, as I've previously argued, was not properly authenticated. So the authenticity issues compound the hearsay ones. And the victim's statements were there for more than context. They were there to show coercion. This was an important issue and, again, the statements should not have been established via hearsay. But the most notable problem on hearsay are exhibits 155 and 156. Again, these come from the Mike Malone account. And what we have are screenshots of conversations between Jorgensen and the victim that were sent to the Mike Malone account. So even if we set aside the Mike Malone authenticity problem, the hearsay is the point of the exhibit. This is hearsay within hearsay. As the agent testified at trial, this is Jorgensen's introduction of Mike Malone to the victim. It's there to establish that introduction that Jorgensen told the victim to talk to Malone, not to provide any context for statements made by the defendant. And finally, on the issue of hybrid representation, I just want to make it clear, the error being cited here is not that the court exercised its discretion to deny hybrid representation, but that the court did not recognize the existence of that discretion. In other words, the issue is in the selection of the proper standard rather than its application. You really think Judge Schreier didn't know the standard? Isn't the reasonable interpretation of that statement that it's generally not allowed in her court? That is an interpretation of what Judge Schreier said. But the fact that she did not make full recognition of that this was a possibility is what gives me cause for concern. Does it matter that then she had a lengthy dialogue with the appellant and at the end he agreed to proceed with counsel? Again, my argument is that the judge was not ultimately explicitly stating, yes, I have the discretion to do this and in the exercise of my discretion, this is a decision I make. Counsel, can I go back to the hearsay issue? I agree with you that the ones between the victim and Jorgensen are particularly problematic from a hearsay perspective. I think it's hard to justify those under any hearsay exception. However, if the other statements, the ones that direct communications between the Mike Malone account and the victim are admissible because there's context for context, is the admission of the Jorgensen TB victim screenshots, would that be harmless? No, it would not. Because once again, the conversation between Jorgensen and the victim, that's providing the introduction. It goes back once again to our question of authenticity. It is bringing Jorgensen, Mike Malone, and the victim together into a unit that makes this happen. Why do we care? Why would the jury care if how the introduction was made, if we have the actual conversations between the victim and the Mike Malone account? Because again, one of the issues here is establishing that the defendant is Mike Malone. I see. So it goes back to the authenticity argument. Both to the authenticity argument and also the possibility that Jorgensen was operating the Mike Malone account as well. I see. Did you want to reserve the remainder of your time? I would, Your Honor. Thank you. Thank you. Mr. Clapper, you may proceed when you're ready. All right. Thank you, Your Honor. Jeff Clapper, on behalf of the United States, we're asking this court to affirm the conviction of Kevin Lamb for the convictions of child pornography in his case. I will address the issues in the order that were presented here. First, as to the authenticity argument, and I think what's important to realize here and reflect on is that the issue is about admissibility, not about whether it should have been presented to the jury or not, not about whether it was conclusive. And I think that the Brown case that you mentioned earlier, Judge, is very insightful on this, that for this type of material to be admitted, it doesn't have to conclusively prove that the author is who, in this case, the government claims it is. It has to have a rational basis. And the government presented that in this case. There was a connection to the Mike Malone records to Kevin Lamb. First of all, the records were certified. They were authentic and accurate as presented. And if the court will recall, there was quite a bit of a pretrial hearing on this particular issue as to this exhibit. And as to the accuracy of the records, Judge Schreier indicated they were what the records claimed they were. That is the official records of the Mike Malone Facebook account. But the judge reserved ruling on the admissibility until the government established at trial, there was some connection between Kevin Lamb and the Mike Malone Facebook account. And we did that right away in this trial. Agent Aramayo testified. And what's important is a number of the exhibits that show that Kevin Lamb had this alternate account. She started off with the Facebook records between Kevin Lamb's Facebook account, the one identified as Kevin Lamb, and Jason Jorgensen. And in Exhibit 143, they talk about Jason Jorgensen having an alternative account, and it's safer that way. Then when you go to Exhibit 144, you can see that Jorgensen is communicating with the Lamb account that he sent a video to the Mike Malone account. So there's your connection between Kevin Lamb and Mike Malone, or at least the first connection. And then there's another Exhibit 145. Again, Jorgensen sends another Facebook message to the Kevin Lamb account referring to something he sent to the Mike Malone account. Or in this case, it said, send some hot videos to Mike. Well, we know what that is because it's the Mike Malone account. So in the course of the investigation by Agent Aramayo, she does a search warrant of the Mike Malone account and finds that, you know, it might say Mike Malone on it, but all of the profile pictures on it are of Kevin Lamb. And she presented those to the jury to compare. The photos in the Kevin Lamb account, Exhibits 30 through 37, were compared to the photographs in the Mike Malone account, Exhibits 20 through 27. When you look at the photographs, you can tell it's the same person. Agent Aramayo testified it's the same person. And a lot of times, well, at least in a couple of them, he's wearing the same Nike ball cap. And one of them, he makes the same hand gesture on those. There was also the connection to the phone number. The same Verizon cell phone was used and associated with both accounts. So that was sufficient enough evidence for the authenticity for it to be admitted to the jury. Ultimately, though, it's up to the jury to decide whether the conclusive determination has been made. Isn't this a little bit of an extension of Brown, though? And I realize Brown isn't isn't binding on us, but there you had an admission that it was the Facebook account. And here, isn't Ms. Hines correct that, frankly speaking, all of this evidence is circumstantial. And it could well be that somebody else was operating the Mike Malone account, that it didn't have to be Mr. Lamb. Isn't that some cause for concern, given that the Third Circuit identified that as the risk of not having enough evidence to authenticate a social media account? It goes to the admissibility issue, not to the conclusive issue, which is ultimately up for the jury to decide. But the government made its prima facie case that it was who the author was, who the government claimed to be. In this case, Kevin Lamb was operating the Mike Malone account. That was further verified through some of the evidence found in his apartment. Photographs on micro disks, micro SD cards. It contained digital files, some of the same photographs that were used on the Mike Malone account that were sent to him. Also, there were connections to the cell phone found in the drawer of the Kevin Lamb apartment, which, by the way, he lived there alone. These things were in a drawer of a desk. There were just multiple different connections between Kevin Lamb and the Mike Malone account. It was easy for the jury to make that conclusion. And there was no evidence that it was anybody else. There are too many interconnected combination of things for the jury to conclude otherwise. But the issue on appeal here is admissibility. There were multiple points of contact for Judge Schreier in this case to rule that it was at least admissible. As to the hearsay issue, Judge, you raised an issue about the comments between the victim and Jorgensen. That's exhibits 155 and 156. The first thing I would say about that is those exhibits are from the Mike Malone Facebook account. They were certified records. They weren't found on a phone. They are connected to Kevin Lamb through that account. They show the introduction of Kevin Lamb acting as Mike Malone to the victim in this case, the 14-year-old autistic girl in Indiana. And it was important for the, I believe, for the jury to understand why does some random guy in South Dakota have some connection to a 14-year-old autistic girl in Indiana. Well, this is how it started, is through those two exhibits. They were offered to show the context of the connection between Kevin Lamb and the victim in this case. The problem I'm having, though, is that there's really not, unlike the other statements where you have either the Lamb or the other account, the Mike Malone account, there you have a hearsay exception at least for one of the declarants. Here you don't have a hearsay exception. The party admission exception. Here you don't have an exception for either one of them, for the victim or Jorgensen. So I'm just not sure context applies in a situation like this. Well, the case law does say that context is an exception to the hearsay ruling and also the exception for the effect on the listener or, in this case, the receiver of the message. So Kevin Lamb, acting as Mike Malone on the Mike Malone Facebook account, receives these screenshots from Jason Jorgensen. And that's why the Mike Malone account then is used to make contact with the victim. So the effect on the listener makes it admissible. And there's a couple Eighth Circuit cases on that that provides for that exception, the Looking Cloud and the Climb cases. So I believe that cures any problems with those two exhibits. Thank you. Any other questions? As to the last issue dealing with the hybrid council, I think it's important to understand the timeline of the legal representation of Kevin Lamb. The error claimed by him on appeal occurred. And I'm not saying it's an error, but the alleged error occurred very early on in this case. Keeping in mind, this was after the defendant was arrested in Colorado, underwent some type of psychiatric evaluation and was cleared to proceed to court. So the court had that already in its mind before this statement was made. Plus, he had been through a couple of attorneys by the time he made this request for hybrid representation. It was totally within the district court's discretion to evaluate the circumstances that they existed at that time to make that statement to him. It was further confirmed by what's happened later on in the case where he went with another court-appointed attorney. Then he represented himself. Then he had to have an attorney appointed to him again. And then, as the court's aware, at one of the pretrial hearings, I believe it was in January of 2019, he was completely unresponsive. The guards had to pull him from the cell to appear for the hearing. So he was in no shape to be assisting, acting as his own attorney, or at least in part to be attorney. At least he didn't intend for that to happen. So it just confirmed what the court's evaluation of all the circumstances were prior to that time. Suppose that Judge Schreier leave out the word generally and says that hybrid representation is not allowed in federal court. Even in light of your timeline, wouldn't that be erroneous? It would be a mistake to say that without the generally. However, at the end of that hearing, he agreed for the representation that she established for him. So any request that he had earlier made, I would say that he acquiesced or agreed not to have that type of representation. Why does that matter? So if the court tells me you can't do this, you just can't do it. So my two options are proceed pro se or have counsel, keep counsel. At that point, I may later agree with the court because the option I actually want, I believe, is off the table. It just doesn't exist anymore. So I know you make that argument. Why does it make any error harmless? It's still within the court's discretion. Whether she made an accurate statement or not, it was her decision to make based on the circumstances. And those circumstances at that time were a defendant arrested out of state that underwent a psychiatric evaluation with very little education. I think he had a high school degree, had a prior felony conviction. This was somebody that wasn't in shape to be acting as their own attorney. And that was a proper mood or move that she made or a decision that she made based on the facts that she had at the time. With nothing else, I'll end my time. Thank you. Thank you, Mr. Clapper. Ms. Hertz, I believe you have a few two and a half minutes, about two minutes and 45 seconds remaining. All right. Thank you, Your Honor. I just have two quick points. First, the government's authenticity argument is based on the distinction between admissibility and conclusiveness. And it's true. The law does not require proof beyond a reasonable doubt to to authenticate and exhibit. But it's also not an open door in the case of falsifying social media evidence. The ease of that is the reason that courts have required more than a name in a picture. In this case, there simply wasn't enough weight on the scales to tip it towards authentication. On the on the issue of Exhibits 155 and 156. And these are the conversations between Jorgensen and the victim. First of all, in the purpose of these exhibits, you know, whether whether they were meant to to show the effect on Malone Lamb or not. I think it's important to look at how how the investigating agent described them. Again, on page 179 of the transcript, the basic the agent says that this shows Jorgensen's introduction of Mike Malone to the victim. That was the purpose for which they were admitted. Not not for any purpose of showing the effect on Malone slash lamb. In addition, the fact that these are Facebook records is is not is not sufficient to. To authenticate them or make them not hearsay. And that's all I have. Your honors. All right. Thank you, Mr. The court would like to note that you are acting pursuant to the court's request of the Criminal Justice Act. We appreciate your willingness to take the representation. Madam Clerk, does that.